IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

L.R. MCCOY & COMPANY, INC.  : CIVIL ACTION
: NO. 10-1301
v. :
:
DAVID S. BEILER, et al. :

O'NEILL, J.  MARCH 16, 2011

## MEMORANDUM

Plaintiff L.R. McCoy has filed a nine count complaint against defendants,[1] alleging claims of breach of contract, fraud, conversion, unjust enrichment, action on book account and action on an account stated. On May 11, 2010, defendants filed a motion to dismiss the complaint.[2] Presently before me are defendant's motion and supporting brief and plaintiff's brief in opposition to the motion. For the reasons that follow, I will grant in part and deny in part defendants' motion to dismiss.

## BACKGROUND

Plaintiff is in the business of selling fencing materials. On April 1, 1991, defendant Beiler, acting on behalf of defendant Millcreek, submitted an application for a line of credit with

---

[1] Plaintiff has named four defendants: (1) David S. Beiler; (2) Glen L. Eberly; (3) Keystone Vinyl Technologies, LLC; and (4) Millcreek Fence and Farm Systems.
The nine counts contained in plaintiff's complaint are as follows: (1) breach of contract against Keystone, Eberly and Beiler; (2) breach of contract against Millcreek and Beiler; (3) fraud against all defendants; (4) conversion against Keystone, Eberly and Beiler; (5) quantum meruit/unjust enrichment against all defendants; (6) action on book account against Keystone, Eberly and Beiler; (7) action on book account against Millcreek and Beiler; (8) action upon an account stated against Keystone, Eberly and Beiler; and (9) action upon an account stated against Millcreek and Beiler.

[2] This case was originally assigned to my late colleague, the Honorable Thomas M. Golden. On August 17, 2010, following Judge Golden's death, the case was transferred to my calendar.

plaintiff. Shortly thereafter, plaintiff and Millcreek entered into a contract pursuant to which plaintiff would sell fencing material to Millcreek. As part of that contract, Beiler agreed to be personally liable for "any and all debt owed by Millcreek to [plaintiff]." Compl. ¶ 35. The contract also provided that Millcreek would incur a finance charge on all unpaid balances of 1.5% per month and would be liable for any attorney's fees incurred "in the event that it was necessary for [plaintiff] to hire an attorney to collect under the [c]ontract." Compl. ¶ 34. The parties operated under the terms of this contract until October 28, 2009. At some point, however, Millcreek stopped paying plaintiff for the fencing materials it had received.

Plaintiff's business relationship with defendant Keystone was slightly different. On March 4, 2008, Beiler and defendant Eberly, on behalf of Keystone, submitted an application for a line of credit with plaintiff. Shortly thereafter, the parties agreed that plaintiff would consign fencing materials to Keystone. Both Beiler and Eberly agreed to be held personally liable for "any and all debt owed by Keystone to [plaintiff]." Compl. ¶ 17. The contract with Keystone, like the contract with Millcreek, provided that Keystone would incur a finance charge on all unpaid balances of 1% per month and would be liable for any attorney's fees incurred "in the event that it was necessary for [plaintiff] to hire an attorney to collect under the [c]ontract." Compl. ¶ 16. The parties operated under the terms of this contract from August 12, 2009 through October 28, 2009. At some point, however, Keystone stopped paying plaintiff for the consigned materials it had sold. Because Keystone, Beiler and Eberly repeatedly promised that the invoices would be paid, plaintiff continued to consign fencing materials to those defendants. Despite defendants' promises, plaintiff never received payment for the consigned materials.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

ANALYSIS

Defendants move to dismiss the complaint on a variety of grounds. They argue that: (1) plaintiff has not pled sufficient facts to support its fraud claims and in any event that the gist of the action doctrine precludes such fraud claims; (2) the economic loss doctrine bars plaintiff's conversion claims; (3) Beiler and Eberly cannot be held personally liable for any claims that do not arise out of the personal guarantees they signed; (4) plaintiff has not alleged facts giving rise to liability on the part of Beiler and Eberly for the "non-contract claims;" (5) neither Millcreek nor Keystone can be held liable under an unjust enrichment theory for the other's contractual obligations; (6) plaintiff is not entitled to attorney's fees or more than six percent per annum in financing charges; (7) plaintiff has not alleged facts that, if proven, would entitle it to punitive damages. Before I proceed to the merits of defendants' arguments, I must decide whether Pennsylvania or Massachusetts law applies to this case.

I. Choice of Law

The parties disagree as to which law applies to this case. Defendant argues that Pennsylvania law applies while plaintiff argues that Massachusetts law applies. Pennsylvania

choice of law rules apply when a district court sits in diversity. Specialty Surfaces Intern., Inc. v. Cont'l Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010).

   A.   Choice of Law Provision

At the outset, I note that the agreement between Keystone and plaintiff includes a choice of law provision that provides "[t]he contract for sale of the Goods shall be governed by the laws of the Commonwealth of Massachusetts." Compl. Ex. A. I disagree with plaintiff's contention that this provision put defendants on notice that "the law of Massachusetts would apply to all business dealings between the parties." Pl.'s Br. at 5. Even where a choice of law provision governs contractual claims, such a provision "do[es] not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." Jiffy Lube Intern., Inc. v. Jiffy Lube of Pa., Inc., 848 F. Supp. 569, 576 (E.D. Pa. 1994). In order to determine the fair import of the provision, I must analyze the provision to "determine, based on [its] narrowness or breadth, whether the parties intended to encompass all elements of their association." Id., citing Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc., 795 F. Supp. 151, 157 (W.D. Pa. 1992). The Jiffy Lube Court considered a choice of law provision that provided "[t]his Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Maryland." Id. The Court held that because the terms of the provision were limited to "this agreement," it did not govern tort claims raised by the parties. Id.; accord Smith v. Lincoln Ben. Life Co., No. 08-01324, 2009 WL 789900, at *7-8 (W.D. Pa. Mar. 23, 2009); Am. Hearing Aid Assocs., Inc. v. GN Resound N. Am., 309 F. Supp. 2d 694, 704 (E.D. Pa. 2004); Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999). Because there is no legally significant difference between the choice of law language

5

considered by the Jiffy Lube Court and the language at issue in this case, I find that the choice of law provision here dictates only that Massachusetts law applies to plaintiff's breach of contract claim against Keystone, Eberly and Beiler. I must undertake additional choice of law analysis to determine what law applies to the remainder of plaintiff's claims.

B.    Choice of Law Principles

Pennsylvania employs a two-part approach in deciding what law to apply. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229-30 (3d Cir. 2007). First, I must determine whether there is an actual conflict between the possibly applicable laws. Id. at 230. If I find that an actual conflict exists, I must then "classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." Id. A true conflict is one in which "both jurisdictions' interests would be impaired by the application of the other's laws."[3] Id.

In the event that I find a true conflict, "[I] must then determine which state has the 'greater interest in the application of its law.'" Id. at 231, quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970). In order to make such a determination, I must undertake an analysis that combines "the approaches of both the Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." Id., citing Melville v. Am. Home Assur. Co., 584 F.2d 1306, 1311 (3d Cir. 1978). "This analysis requires more than 'a mere counting of contacts.'" Id., citing Cipolla, 267 A.2d at 856. "Rather, [I] must weigh the contacts on a qualitative scale according to

---

[3] A false conflict is presented "where the laws of the two jurisdictions would produce the same result on the particular issue . . . ." Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006). An unprovided-for situation "is one in which neither state's interests would be impaired if its laws were not applied." Hammersmith, 480 F.3d at 230 n.9.

their relation to the policies and interests underlying the [particular] issue." Id., quoting Shields v. Consol. Rail Corp., 810 F.2d 397, 400 (3d Cir. 1987).

"Conflict of laws principles do not require that all legal issues presented by a single case be decided under the law of a single state. Instead the choice of law decisions can and should be made on an issue-by-issue basis, and thus the law of different states can apply to different issues in the same case." Kilmer v. Connecticut Indem. Co., 189 F. Supp. 2d 237, 246 (M.D. Pa. 2002), citing Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 169 (3d Cir. 1999). I will therefore consider what law applies to each of plaintiff's claims not governed by the choice of law provision.

C. Application

I must first decide whether there is an actual conflict between Pennsylvania and Massachusetts law. The parties do not identify any conflicts between Pennsylvania law and Massachusetts law with respect to plaintiff's claims of fraud, conversion, unjust enrichment, book account or account stated. Where neither party cites a conflict between the potentially applicable laws on a certain issue, courts avoid the question unless a conflict is apparent. See Mzamane v. Winfrey, 693 F. Supp. 2d 442, 473 (E.D. Pa. 2010), citing Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994). My review of the case law reveals that Pennsylvania law and Massachusetts law are not in conflict with respect to claims of fraud,[4] conversion,[5]

---

[4] Compare PPG Indus., Inc. v. Generon IGS, Inc., — F. Supp. 2d —, 2011 WL 113665, at *5 (W.D. Pa. 2011), citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994) ("In Pennsylvania, a claim for fraud must allege: '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'") with Zyla v. Wadsworth, Div. of Thompson Corp., 360 F.3d 243, 254 (1st Cir. 2004)

unjust enrichment,[6] book account[7] and account stated.[8]  I will therefore apply Pennsylvania law to

---

("To demonstrate [fraud under Massachusetts law, the plaintiff] must show (1) that [the defendants] made knowingly false statements; (2) that those statements were made with the intent to deceive; (3) that those statements were material to [the plaintiff's] decision to sign the April 10 Agreement; (4) that [the plaintiff] reasonably relied on those statements; and (5) that she was injured as a result of her reliance.") and Christian v. Mooney, 511 N.E.2d 587, 593 (Mass. 1987) (defining fraud's scienter requirement as "a misrepresentation of an existing fact made with knowledge of the falsity of the misrepresentation or with reckless disregard of the actual facts.") and Shawmut-Canton, LLC v. Great Spring Waters of Am., Inc., 816 N.E.2d 545, 549 (Mass. App. Ct. 2004) (same).

[5]   Compare Kia v. Imaging Scis. Intern., Inc., 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010), citing Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 878 (Pa. Super. Ct. 1997) (internal quotation marks omitted) (defining conversion under Pennsylvania law as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification") with In re Bauer, 890 N.E.2d 847, 857 (Mass. 2008) (noting that "[t]he elements of conversion require that a defendant be proved to have intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which he has no right of possession at the time[.]").

[6]   Compare Kane v. Platinum Healthcare, LLC, No. 10-4390, 2011 WL 248494, at *5 (E.D. Pa. Jan. 25, 2011), citing Mitchell v. Moore, 729 A.2d 1200, 1202 n.2 (Pa. Super. Ct. 1999) (noting that to prove unjust enrichment, the plaintiff must establish: "'(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value'") with Sweeney v. DeLuca, No. 042338, 2006 WL 936688, at *8 (Mass. Super. Ct. Mar. 16, 2006) (noting that to succeed on an unjust enrichment claim under Massachusetts law, the plaintiff must demonstrate: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable").

[7]   Compare C-E Glass v. Ryan, No 1770-1974, 70 Pa. D. & C.2d 251, 254 (Pa. Com. Pl. 1975) (discussing an action on an open book account) with Taylor v. Barton-Child Co., 117 N.E. 43, 44 (Mass. 1917) (same).  There appears, however, to be very little Massachusetts case law pertaining to book account claims.
   I note also that, although neither party has raised the issue, the book account claims appear to be duplicative of the breach of contract claims.  See Transmodal Corp. v. EMH Assocs., Inc., No. 09-3057, 2011 WL 124641, at *5 n.6 (D.N.J. Jan. 14, 2011) (applying New Jersey law).  Even if plaintiff proceeds on both counts through discovery, it will not be permitted to recover twice for the same injury.

8

these claims. See Hammersmith, 480 F.3d at 229 ("If there is a false conflict under this definition, the court does not have to engage in a choice of law analysis, and may refer to the states' laws interchangeably.").

With respect to the fraud claim, plaintiff argues that an actual conflict exists because Massachusetts law permits a plaintiff to pursue simultaneous tort and contract claims arising from the same occurrence, while Pennsylvania law does not. Pl.'s Br. at 6. Defendant, without much discussion, simply asserts that "there does not appear to be any conflict between Massachusetts law and Pennsylvania law with respect to those claims asserted by [plaintiff] not governed by the choice of law provision in the 2008 Keystone Agreement." Defs.' Br. at 6. For the reasons discussed in more detail infra, however, I need not decide whether an actual conflict exists between the laws of the two states because I find that the allegations of fraud contained in the complaint do not satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b) and I will therefore dismiss the fraud claim on that ground.

In summary, I will apply Massachusetts law to count I, which alleges breach of contract against Keystone, Eberly and Beiler. I will apply Pennsylvania law to the remainder of plaintiff's claims.

---

[8] Compare Richburg v. Palisades Collection, LLC, 247 F.R.D. 457, 464 (E.D. Pa. 2008) (internal citations omitted), citing David v. Veitscher Magnesitwerke Actien Gesellschaft, 35 A.2d 346, 349 (1944) ("'[A]n account stated' traditionally arises when two parties, who engage in a series of transactions with one another, come together to balance the credits and debits and fix upon a total amount owed. This final tally, once assented to, becomes the 'account stated,' and any further cause of action is based on this 'account stated' rather than on any of the underlying transactions.") with Bucklin v. Nat'l Shawmut Bank, 244 N.E.2d 726, 728 (Mass. 1969) ("An 'account stated' is an acknowledgment of the existing condition of liability between the parties.").

9

II.     Plaintiff Has Not Satisfied Rule 9(b) With Respect To Its Fraud Claims

Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." "The purpose of Rule 9(b) is to 'provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior.'" U.S. Dept. of Transp. ex rel. Arnold v. CMC Engineering, — F. Supp. 2d —, 2010 WL 3942488, at *3 (W.D. Pa. 2010), quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). "To comply with the requirements of Rule 9(b), a complaint must state 'the date, place or time of the fraud,' or otherwise inject 'precision or some measure of substantiation into [the] allegations of fraud.'" U.S. ex rel. Thomas v. Siemens AG, 708 F. Supp. 2d 505, 511 (E.D. Pa. 2010), citing Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004); see also PPG Indus., Inc. v. Generon IGS, Inc., — F. Supp. 2d —, 2011 WL 113665, at *5 (W.D. Pa. 2011), citing Seville Indus. Mach. Corp. v. Southmost Corp., 742 F.2d 786, 791 (3d Cir. 1984).

I find that plaintiff has not satisfied Rule 9(b)'s particularity requirement with respect to the alleged fraud against any of defendants. It comes closest in its allegations pertaining to the Keystone agreement. Paragraph 20 of the complaint alleges that "[d]efendants Keystone, Beiler, and Eberly repeatedly promised to McCoy that the invoices for those consignment sales of fencing would be paid." Paragraph 52 alleges that "[t]he aforesaid [representations] made by defendants to McCoy, that defendants would pay the open invoices and/or not convert the goods consigned to them by plaintiff, were false when made by defendants to McCoy." These allegations fall short, however, because they do not supply sufficient details of the alleged fraud

10

to provide defendants with "notice of the precise misconduct that is alleged." Arnold, 2010 WL 3942488, at *3. The complaint does not include the time, date or place that the allegedly fraudulent statements were made. It also does not allege which of defendants made the statements and to whom the statements were made. More is required in order to state a claim for fraud.

The allegations of fraud concerning the Millcreek agreement are even less precise. The complaint does not contain any well-pleaded allegations that defendant Millcreek, through its officers, made any false statements to plaintiff. To the extent that plaintiff argues that paragraph 20 of the complaint implicates Millcreek, in addition to Keystone, because Beiler and Eberly were officers of that company as well, I disagree. Rule 9(b)'s heightened pleading standard requires far greater precision. Accordingly, I will dismiss count III with leave to amend.[9]

III.    The Economic Loss Doctrine Does Not Bar Plaintiff's Conversion Claim

Defendants argue that the economic loss doctrine precludes plaintiff's conversion claim. "The economic loss doctrine provides [that] 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.'" Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 841 n.3 (Pa. 2009), quoting Adams v. Copper Beach Townhome Communities, LLP, 816 A.2d 301, 305 (Pa. Super. Ct. 2003). Plaintiff argues that it has not asserted any claims of negligence and therefore the economic loss doctrine is inapplicable.

I agree with plaintiff. In Pennsylvania, the economic loss doctrine does not apply to

---

[9] In light of this holding, I need not decide whether plaintiff's fraud claims arising out of the Millcreek agreement are barred by Pennsylvania's gist of the action doctrine.

intentional torts such as conversion. See Worldwideweb Networx Corp. v. Entrade, Inc., No. 3839 Dec. Term 2001, 2002 WL 1472336, at *3 (Pa. Com. Pls. June 20, 2002) (collecting cases); First Republic Bank v. Brand, No. 147 Aug. Term 2000, 2000 WL 33394627, at *6 (Pa. Com. Pls. Dec. 19, 2000). In declining to apply the economic loss doctrine to intentional tort claims, the Brand Court adopted the reasoning of a Wisconsin Federal District Court:

> Although it makes sense to allow parties to allocate the risk of mistakes or accidents that lead to economic losses, it does not make sense to extend the doctrine to intentional acts taken by one party to subvert the purposes of a contract. Although theoretically parties could include contractual provisions discussing the allocation of responsibility when one party intentionally lies or misleads the other, it would not be conducive to amicable commercial relations to require parties to include such clauses in contracts. Expressing such a basic lack of trust in the other party would be likely to sour a deal from the start.
>
> A party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract. Public policy is better served by leaving the possibility of an intentional tort suit hanging over the head of a party considering outright fraud . . . .

See Brand, 2000 WL 33394627, at *6, quoting Stoughton Trailers, Inc. v. Henkel Corp., 965 F. Supp. 1227, 1236 (W.D. Wis. 1997). I predict that the Pennsylvania Supreme Court would adopt this reasoning as well.[10] Accordingly, I will deny defendants' motion to dismiss count IV.

IV. **The Pennsylvania Limited Liability Corporation Law Does Not Preclude Claims Against Beiler and Eberly in Their Personal Capacities**

Defendants Beiler and Eberly argue that they cannot be held liable for claims that do not

---

[10] Likewise, Massachusetts law does not apply the economic loss doctrine to intentional tort claims. See IDT Telecom, Inc. v. Voice Distribs., Inc., No. 072465, 2008 WL 1800102, at *3 (Mass. Super. Ct. Apr. 11, 2008), citing Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988 (1st Cir. 1992) and Beekman v. Marsters, 80 N.E. 817 (Mass. 1907).

arise out of the personal guarantees they signed. Specifically, they argue that I must dismiss the claims against them for conversion, unjust enrichment, book account and account stated because those claims do not arise out of the personal guarantees they signed. Plaintiff argues that it has alleged facts sufficient to support each claim against Beiler and Eberly.

Pennsylvania law with respect to limited liability companies states that "[e]xcept as provided in subsection (e), the members of a limited liability company shall not be liable, solely by reason of being a member, under an order of a court or in any other manner for a debt, obligation or liability of the company of any kind or for the acts of any member, manager, agent or employee of the company." 15 Pa. Cons. Stat. Ann. § 8922. This statute prevents members of a limited liability corporation from incurring liability for the debts of the corporation simply by reason of their status as members. See In re LmcD, LLC, 405 B.R. 555, 560 (Bankr. M.D. Pa. 2009); see also Harbor Hosp. Servs., Inc. v. Gem Laundry Servs., LLC, Nos. 4830 July Term 2000, 0207 Aug. Term 2000, 2001 WL 1808556, at *10 (Pa. Com. Pls. July 18, 2001) ("A reasonable interpretation of this section does not connote that members are immune from liability, in all circumstances, but means that members are not liable simply because of their status as members.").

The Millcreek guarantee signed by Beiler states "[t]he undersigned individually and personally, jointly and severally, in order to induce Lawrence R. McCoy & Co., Inc. to extend credit to the herein named applicant(s) agrees to endorse and to guarantee to pay on demand any sums due Lawrence R. McCoy & Co., Inc. by the herein named applicant(s). See Compl. Ex. D. The Keystone guarantee signed by both Beiler and Eberly states "[t]o induce McCoy to extend credit to purchaser, the undersigned personally, jointly, and severally guarantee payment of all

13

obligations of puchaser to McCoy." See Compl. Ex. A. These personal guarantees render the individuals liable for the debts of their corporations. The claims for breach of contract, book account and account stated seek satisfaction of the debt of the corporation.[11] Beiler and Eberly are therefore proper defendants as to those claims.

The conversion claim seeks redress for the alleged breach of a duty that defendants owed to plaintiff. To the extent that the individual defendants may be held liable for such a breach, such liability does not arise from the personal guarantees that they executed. However, members of a corporation who personally direct or participate in a wrongful act may be held individually liable.[12] See Dosco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978) ("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort."); Hitchcock v. Am. Plate Glass Co., 259 F. 948, 952-53 (3d Cir. 1919) ("The director of a corporation is ordinarily liable only for those torts which he himself commits. But his liability is not limited to tortious acts which he actually and physically commits; it extends as well to tortious acts which he actually brings about."). The complaint alleges that the conversion of plaintiff's property was personally perpetrated by Beiler

---

[11] It is immaterial that, as Eberly and Beiler argue, "[neither of them] participated in the series of transactions from which the book account and account stated claims arise." Defs.' Br. at 19. The book account and the account stated claims seek satisfaction of the debts owed by Millcreek and Keystone to plaintiff–debts for which Eberly and Beiler have assumed personal liability.

[12] The same is true under Massachusetts law. See Lahr v. Adell Chem. Co., 300 F.2d 256, 260 (1st Cir. 1962) ("[A] corporate officer is liable for torts in which he personally participated, whether or not he was acting within the scope of his authority."); Spear v. Somers Sanitation Servs., Inc., 162 F.R.D. 1, 3 (D. Mass. 1995).

14

and Eberly.[13] Compl. ¶ 59. It does not seek to hold Beiler and Eberly liable for the actions of the corporation merely as a result of their status as members of the corporation. Beiler and Eberly are therefore proper defendants as to the conversion claim against them.

The personal guarantees do not render Beiler and Eberly liable for the amount by which Millcreek or Keystone were unjustly enriched. The plain language of the personal guarantees render Beiler and Eberly liable for "sums due [by Millcreek]" or "obligations of [Keystone]." Unjust enrichment, which is an equitable doctrine, prevents one party from retaining benefits conferred upon it by another party under inequitable circumstances. Mack v. Bear Stearns Residential Mortg. Corp., — F. Supp. 2d —, 2010 WL 5136033, at *3 (E.D. Pa. 2010), citing Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993). Benefits conferred under inequitable circumstances cannot be said to be "sums due" or "obligations"–which could arise only pursuant to a contract. Because Beiler and Eberly did not agree to be personally liable for the amount by which Millcreek and/or Keystone were unjustly enriched at plaintiff's expense, they cannot be held personally liable for such unjust enrichment. However, nothing prevents plaintiff from recovering from Beiler and Eberly the amount by which they were personally unjustly enriched.[14]

V.  Each Corporate Defendant May Not Be Held Liable for Unjust Enrichment Against the Other

Defendants argue that the corporate defendants cannot be held jointly and severally liable for the entire amount by which defendants have allegedly been unjustly enriched. In other words, Millcreek cannot be liable for the $427,689.74 by which Keystone was allegedly unjustly

---

[13]  Beiler and Eberly may, of course, present evidence disputing this characterization.

[14]  I note that it appears unlikely that Beiler and Eberly were unjustly enriched in their personal capacities. Plaintiff will be required to produce evidence on this issue.

enriched and Keystone cannot be liable for the $36,939.09 by which Millcreek was allegedly unjustly enriched. I agree.

Under Pennsylvania law, "to be a joint tortfeasor, 'the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.'" Lasprogata v. Qualls, 397 A.2d 803, 806 n.4 (Pa. Super. Ct. 1979), quoting Black's Law Dictionary 1661 (4th ed. 1968). Neither of these conditions is present here. The allegations in the complaint establish that plaintiff sold fencing materials to Millcreek pursuant to an agreement executed in 1991. Plaintiff consigned fencing material to Keystone pursuant to a separate contract executed in 2008. To the extent that either corporation was unjustly enriched, the unjust enrichment occurred at different times, in different amounts and pursuant to different contracts. Plaintiff's complaint contains no well-pleaded allegations that Millcreek and Keystone acted jointly in causing injury to plaintiff. The fact that the two corporations were owned by the same individuals is insufficient by itself to establish such a connection. If plaintiff is successful on its unjust enrichment claims against Keystone and Millcreek, each corporation will be liable only for the amount by which it was unjustly enriched.

Eberly additionally argues that because he has not agreed to guarantee Millcreek's debt, he cannot be held jointly and severally liable for that debt. I agree. Although the complaint alleges that Eberly is "a controlling shareholder and officer and a director, of defendants Keystone and/or Millcreek," compl. ¶ 9, "a corporation . . . is normally regarded as a legal entity separate and distinct from its shareholders." Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978). Because Eberly did not personally guarantee Millcreek's obligations, he cannot be held

personally liable for the amount by which Millcreek was unjustly enriched.[15]

VI. Plaintiff's Demands

A. Attorney's Fees

Defendants argue that plaintiff is entitled to demand attorney's fees only with respect to its breach of contract claims. "The general rule in this Commonwealth is that there is no recovery of attorney's fees from an adverse party in the absence of an express statutory authorization, clear agreement between the parties, or the application of a clear exception."[16] Bayne v. Smith, 965 A.2d 265, 267 (Pa. Super. Ct. 2009). In support of its demand for attorney's fees, plaintiff relies on contractual provisions contained in both the Millcreek and the Keystone agreements. The relevant language in the Millcreek agreement provides "In the event of default, the Purchaser agrees to be responsible for paying all sums due and to become due to Lawrence R. McCoy & Co., Inc. from the Purchaser and to pay all losses, costs, attorneys' fees or expenses which Lawrence R. McCoy & Co., Inc. may suffer by reason of the Purchaser's default." See Compl. Ex. D. The relevant language in the Keystone agreement provides "[o]n purchaser's default, McCoy may declare all sums owing McCoy by purchaser to be immediately due and

---

[15] I note that no party has asked me to pierce the corporate veil. In Pennsylvania, there is a strong presumption against piercing the corporate veil. Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995). The corporate persona will only be disregarded where "the entity [is] used to defeat public convenience, justify wrong, protect fraud or defend crime." Sams v. Redevelopment Auth. of New Kensington, 244 A.2d 779, 781 (Pa. 1968). There has been no allegation that such circumstances exist in this case.

[16] Massachusetts law is in accord. See U.S. Foodservice, Inc. v. Daignault, No. 10-40103, 2011 WL 576606, at *2 (D. Mass. Feb. 9, 2011) ("the norm, absent a contract or statute to the contrary, is that all parties to litigation bear their own attorney's fees.").

17

payable, and purchaser will pay such sums immediately to McCoy, together with all costs of collection, including, but not limited to, reasonable attorney's fees, that McCoy incurs in enforcing any of its rights or remedies." See Compl. Ex. A.

The plain language of both provisions allows plaintiff to recover attorney's fees incurred by reason of defendants' breaches of their respective contracts. I will reserve judgment, however, on whether plaintiff can recover attorney's fees arising from its tort claims until after it is determined whether plaintiff prevails on such claims. I will therefore deny defendants' motion to strike the demand for attorney's fees from counts IV, V, VI, VII, VIII, and IX without prejudice to the renewal of such motion at an appropriate time.

B.      Interest Rate

Defendants also argue that plaintiff's demand for interest is in excess of the statutorily-mandated annual rate of 6%. "In the absence of express contract, simple interest at the statutory legal rate is recoverable as damages for breach of contract." Formigli Corp. v. Fox, 348 F. Supp. 629, 648 (E.D. Pa. 1972); see also Videoray, LLC v. Integrated Support Assocs., Inc., No. 08-2042, 2008 WL 4489890, at *2 (E.D. Pa. Oct. 6, 2008) (enforcing contractual interest rate of 1.5% per month); Phila. Housing Auth. v. CedarCrestone, Inc., 562 F. Supp. 2d 653, 659 (E.D. Pa. 2008) ("It is equally well-established, however, that, despite the mandatory language of the statute, parties can vary the statutory interest rate by contract."). As defendants concede, see Defs.' Br. at 21, this case involves agreements between the parties concerning the applicable interest rate. The Millcreek agreement provides "[p]urchaser agrees to pay a service charge of [1.5%] (18% per annum) on balances over 30 days past due." See Compl. Ex. D. The Keystone agreement provides "[p]urchaser agrees to pay a service charge of 1% per month, or fraction

18

thereof, on all unpaid amounts after the due date, or the maximum allowed by law, whichever is lower." See Compl. Ex. A. Plaintiff may therefore recover interest at the rates set forth in the agreements on its claims for breach of contract, book account and account stated because each of those claims seeks to recover unpaid amounts under the contracts. On the other hand, the agreements between the parties are inapplicable to plaintiff's conversion and unjust enrichment claims because those claims do not seek to recover unpaid amounts under the contract; instead, they seek redress for breach of a duty and for the inequitable retention of benefits by defendants respectively. To the extent that plaintiff may ultimately recover interest on these claims, it may not recover interest at the rates set forth in the agreements.

VII. Punitive Damages

Defendants argue that plaintiff's demand for punitive damages in its conversion claim must be dismissed.[17] Punitive damages are available in Pennsylvania "for conduct that is outrageous, because of defendant's evil motive or his reckless indifference to the rights of others." Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984). "Punitive damages are available for claims for conversion . . . where a plaintiff demonstrates harm independent of the contractual breach and establishes that defendant's conduct was outrageous or recklessly indifferent to plaintiff's rights." Travelers Ins. Co. v. Swolsky, No. 91-7537, 1992 WL 150698, at *2 (E.D. Pa. 1992). Plaintiff alleges that defendants Keystone, Beiler and Eberly willfully converted plaintiff's property. Compl. ¶¶ 58-61. At this early stage of the case, such allegations are

---

[17] Defendants make the same argument with respect to plaintiff's fraud claim. Because I have already dismissed the fraud claim, I need not decide whether the punitive damage demand contained therein is appropriate.

sufficient to state a claim for punitive damages.[18]

An appropriate Order follows.

---

[18] This decision is, of course, without prejudice to defendants' ability to raise the issue again after discovery has been completed. I note that my review of the complaint leaves me doubtful that plaintiff will be able to prove that defendants engaged in conduct outrageous enough to warrant punitive damages.